

**ORDERED in the Southern District of Florida on October 13, 2022.**

_____
**Mindy A. Mora, Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov**

In re:                                              Case No.: 22-17022-MAM

Hazelton Trust,                                     Chapter 11

    Debtor.
_____/

### ORDER DISMISSING BANKRUPTCY CASE

**THIS MATTER** came before the Court upon an emergency motion (ECF No. 24) (the "Motion") to dismiss or convert and a supplement to the Motion (ECF No. 36) filed by the United States Trustee ("UST"). Creditors Wycliffe Golf and Country Club Homeowners' Association, Inc. ("Wycliffe") and PNC Bank ("PNC") each filed a joinder to the UST's Motion (ECF Nos. 32 and 35). Debtor Hazelton Trust ("Debtor") responded to the Motion (ECF No. 25) (the "Response"). The Court held a hearing upon the Motion, Joinders, and Response on October 7, 2022 at 1:30 p.m. and, after hearing the arguments of counsel, took the matter under advisement.

## LEGAL STANDARD AND SUMMARY OF ARGUMENTS

A. <u>Bankruptcy Code § 1112</u>

The Motion and Joinders seek dismissal of this chapter 11 bankruptcy case (the "<u>Bankruptcy Case</u>") pursuant to 11 U.S.C. § 1112(b), which provides that the Court shall dismiss a chapter 11 case or convert the case to chapter 7, if the movant establishes the existence of "cause". Specifically, § 1112(b)[1] provides:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
>> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>>
>> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>>
>>> (i) for which there exists a reasonable justification for the act or omission; and
>>>
>>> (ii) that will be cured within a reasonable period of time fixed by

---

[1] All section references herein are to the Bankruptcy Code unless otherwise indicated.

the court.

(3) The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph.

(4) For purposes of this subsection, the term "cause" includes—

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B) gross mismanagement of the estate;

(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;

(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;

(E) failure to comply with an order of the court;

(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);

(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J) failure to file a disclosure statement, or to file or confirm a plan,

within the time fixed by this title or by order of the court;

(K) failure to pay any fees or charges required under chapter 123 of title 28;

(L) revocation of an order of confirmation under section 1144;

(M) inability to effectuate substantial consummation of a confirmed plan;

(N) material default by the debtor with respect to a confirmed plan;

(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b).

Although "cause" is undefined in the Bankruptcy Code, § 1112(b)(4) describes factors supporting a finding of "cause" for dismissal or conversion. The UST's Motion contended that several of the enumerated factors are present, including failure to supply the UST with essential information, gross mismanagement, and failure to provide proof of adequate insurance. In the Supplement, the UST further submitted that (i) the signature on Debtor's petition (the "Petition") (ECF No. 1) does not match existing records for Debtor's representative, (ii) despite contrary testimony at the initial debtor interview ("IDI"), some of Debtor's real properties appear to be owned solely through unrecorded deeds, having been acquired by Debtor or entities related to Debtor at foreclosure sales in 2016 and 2022, and (iii) the UST lacks proof of adequate insurance for all of the parcels of real property.

The Supplement and Joinders raised a host of other arguments, including (i) Debtor's lack of eligibility to file bankruptcy, (ii) a pattern of bad faith demonstrated by repeated prior bankruptcy cases filed by Debtor's authorized representative, Hanna Development ("Hanna Dev"), and entities controlled by Hanna Dev or its principal, Nermine Hanna ("Hanna"), (iii) undisclosed liens upon Debtor's real property, (iv) inadequate notice of the Bankruptcy Case to parties in interest, including secured creditors with liens on Debtor's real property, (v) an absence of verifiable income to fund a reorganization effort, and (iv) Debtor's alleged motive of filing bankruptcy purely to delay enforcement of state law remedies relating to an existing foreclosure action.

Debtor's Response contended that the UST's office sent a "bad link" for document upload, and Debtor's counsel sought an extension of the IDI prior to its occurrence. The day after the Hearing, Debtor took the following actions, none of which were timely:

- Filed a "Notice of Florida Statute as Supplemental Authority" (ECF No. 44);

- Withdrew Debtor's motion to extend time to supply missing documentation (ECF No. 45);

- Filed another response to the Motion (ECF No. 46) (the "Second

Response")² ; and

- Filed a copy of Debtor's purported property insurance records (ECF No. 47).

B. Bankruptcy Code § 109(g)

In addition to dismissal under § 1112(b), PNC sought the equivalent of injunctive relief pursuant to § 109(g), which permits the Court to impose up to a 180-day ban on a debtor filing a subsequent bankruptcy case. Section 109(g) provides as follows:

> (g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

PNC argued that repeated filings involving Debtor's ultimate managing principal, Hanna, as well as Hanna Dev, indicate that this Bankruptcy Case was filed in bad faith. For that reason, PNC sought a 180-day prohibition against future bankruptcy filings involving Debtor, Hanna, and any entity owned solely by Hanna.

---

² Because it was filed in contravention of Local Rule 5005-1(F) and subsequent to the matter being taken under advisement, the Court does not consider the arguments raised in the Second Response. It would be unduly prejudicial to all other parties in interest for the Court to consider new legal arguments or facts not proffered at the Hearing.

For its part, Wycliffe contended that Debtor strategically filed the Bankruptcy Case just over an hour prior to a scheduled foreclosure sale in the lien foreclosure action styled as *Wycliffe Golf and Country Club Homeowners' Association, Inc. v. Unknown Trustees, Heirs, Beneficiaries or Devisees of The Hazleton Trust, et al.* (Case No. 502021CA008706XXXXMB in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida). Wycliffe argued that this Bankruptcy Case was nothing more than an attempt to frustrate the legitimate exercise of its enforcement rights against its collateral located at 4678 Hazleton Lane, Wellington, Florida.

## ANALYSIS

A. <u>Debtor's Eligibility to File Bankruptcy</u>.

PNC contended that Debtor was ineligible to file bankruptcy because Debtor failed to meet the qualifications of a business trust under applicable Florida and federal law. The Court agrees.

Bankruptcy Code § 109 permits a "person" residing or possessing a domicile, a place of business, or property in the United States (or a municipality) to seek bankruptcy relief. Because "person" is undefined within that section of the Bankruptcy Code, the next source of authority is § 101(35), which defines "person" as including an individual, partnership, or corporation. Section 101(8)(A)(v) further expands the scope of debtor eligibility by clarifying that the term "corporation" includes a business trust. Together, these sections of the Bankruptcy Code clarify

7

that Debtor, a trust, is eligible to be a debtor under Chapter 11 if (and only if) Debtor qualifies as a *business* trust under applicable state law. In this instance, Florida Statutes provide the source of state law.

Chapter 609 of the Florida Statutes set forth the requirements for qualification as a business trust in Florida. Florida Statue § 609.01 provides that two or more persons "may organize and associate themselves together for the purpose of transacting business in this state" under a declaration of trust. In order to qualify as a business trust, however, the entity (or "association") must file with the Department of State a "true and correct" copy of the declaration of trust under which the entity proposes to conduct business. Fla. Stat. § 609.02; *see also In re Mohan Kutty Trust*, 134 B.R. 987, 989 (Bankr. M.D. Fla. 1991). The association seeking a statutory designation as a business trust must also remit a mandatory filing fee of $350 to the Florida Department of State. Fla. Stat. § 609.02.

Business trusts generally serve a unique purpose. They are created to promote a business purpose—with title to any property held by a trustee under centralized management, to ensure continuity of existence uninterrupted by death among the beneficial owners, to allow transferability of interests, and to provide for limited liability. *In re St. Augustine Trust,* 109 B.R. 494, 495 (Bankr. M.D. Fla. 1980). By contrast, a nonbusiness trust serves to protect and preserve a trust res. *In re Treasure Island Land Tr.*, 2 B.R. 332, 334 (Bankr. M.D. Fla. 1980). ("The powers granted in a traditional trust are incidental to the principal purpose of holding and conserving

particular property, whereas the powers within a business trust are central to its purpose.") A business trust's similarity to a corporation, including its essential business purpose, provides an equitable basis for bankruptcy relief. *Id.*

The record fails to demonstrate that Debtor was created for the sole (or even primary) purpose of conducting business for a profit as a business trust within the State of Florida. Debtor did not provide the Court with a copy of any declaration of trust filed with the Florida Secretary of State. Debtor has no apparent business activity other than holding title to real property. Debtor has no paid employees. Debtor does not buy or sell services or goods. Indeed, Debtor's counsel admitted at the Hearing that Debtor was not registered with the Florida Secretary of State, although he claimed that Debtor qualified as a business trust.

Debtor failed to submit to the Court any documentation supporting its claim that it qualifies as a business trust pursuant to applicable Florida Statutes or federal law. While Debtor may indeed be a common-law trust or a land trust pursuant to the Florida Land Trust Act, Fla. Stat. § 689.071, it does not qualify as a business trust under Florida law. This means that Debtor does not and cannot qualify as a debtor under the Bankruptcy Code. Although the Court could dismiss the Bankruptcy Case on this basis alone, it will continue its analysis.

B. <u>Signature Issues</u>.

In addition to Debtor's lack of apparent qualification as a debtor under the Bankruptcy Code, the Petition raised serious issues regarding the appropriateness of

9

this Bankruptcy Case. As the UST pointed out, the "wet" signature of Debtor's principal on the Petition does not match the signature on the IDI Checklist, Certifications and Declarations. *See* ECF No. 36 at pp. 2-3; ECF No. 1 at p.4.

In response to this concern, Debtor's counsel, Jeffrey Siskind, argued that his signature as counsel of record sufficed as proof of Debtor's intent to file bankruptcy. Mr. Siskind, however, is mistaken.

Bankruptcy Rules, Local Rules, and case law collectively provide that an attorney may not sign a bankruptcy petition in lieu of an authorized representative of an entity debtor or on behalf of an individual debtor. Although it is true that an attorney may submit and file documents on behalf of a debtor client, the attorney must first obtain (and maintain) a copy of the debtor's actual signature as proof of intent to seek bankruptcy relief. Bankruptcy Rules 1008 and 9011; Local Rule 9011-1; *In re Whitehill*, 514 B.R. 687, 691 (Bankr. M.D. Fla. 2014) ("The debtor's signature on the original bankruptcy petition does more than simply authorize the petition's filing; it also verifies, under penalty of perjury, that the information in the petition is correct,") (citing *In re Phillips*, 433 F.3d 1068, 1071 (8th Cir. 2006)). *C.f.* Local Rule 1074-1.

Debtor's inability to demonstrate the existence of any actual "wet" signature of Debtor's principal on the Petition provides another strong basis for dismissal of this Bankruptcy Case, pursuant to § 1112(d)(4)(F) and Bankruptcy Rule 1008.

C. <u>Failure to Timely File Schedules</u>.

Upon filing the Petition, the clerk of the Bankruptcy Court notified Debtor that its filing was incomplete due to Debtor's failure to file its schedules and statement of financial affairs with the Petition (ECF No. 4). Those documents were to be filed no later than 14 days after the petition date, or September 26, 2022. Bankruptcy Rule 1007(c). Instead, on September 28, 2022, two days after the deadline, Debtor filed an *Ex Parte* Motion for Extension of Time to file Remaining Initial Documents and to Reschedule Meeting of Creditors, which was amended the same day (ECF Nos. 21 and 23).

On October 6, 2022, Debtor's counsel, purportedly on behalf of Debtor, filed schedules A, B, D, E, F, G and H, (the "<u>Schedules</u>") and the statement of financial affairs (the "<u>SOFA</u>") (ECF No. 39). On October 7, 2022, Debtor's counsel, purportedly on behalf of Debtor, filed a declaration regarding the schedules (ECF No. 41) (the "<u>Declaration</u>"). Each of the Schedules, SOFA, and Declaration were signed solely by Debtor's counsel, but not by any authorized signatory of Debtor. After filing the Schedules, SOFA, and Declaration, Debtor withdrew the motion for an extension of time to file such documents (ECF No. 45).

Bankruptcy Rule 1008 requires that, "All petitions, lists, schedules, statements, and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746." Debtor's failure to include the signature of an authorized signatory on the Schedules, SOFA, and Declaration rendered such

11

filings ineffective as a matter of law. As a result, Debtor failed to timely comply with a filing requirement established by the Bankruptcy Rules, which gives rise to cause under § 1112(d)(4)(F).

D. <u>Inability to Reorganize</u>.

Debtor failed to indicate any available income to fund a reorganization plan. Prior to the Hearing, Debtor submitted a one-page Summary of Assets and Liabilities and the handwritten Schedules and SOFA. (ECF Nos. 37 and 39). Collectively, these filings disclose Debtor's asserted ownership of three parcels of property[3] and $600 of goods. There are no other assets.

Debtor did not list any existing executory contracts or unexpired leases. Debtor did not describe any cash on hand, bank accounts, accounts receivable, or liquid investments. Debtor did not disclose any pending or prospective sale of real property. Debtor's SOFA reflected that it had no gross revenue from business or non-business sources this year and during the two prior years.[4]

---

[3] As the UST pointed out, only one of the parcels of real property listed on Debtor's Schedules purports to be titled in the name of Hazleton Trust (a misspelling of Debtor's name). That is the property located at 4678 Hazleton Lane, Lake Worth, Florida. The parcel located at 101 Brittany C, Delray Beach, Florida is titled in the name of "J-NayNay", while the parcel located at 5470 Garden Hills Cir., West Palm Beach, Florida is titled in the name of "Hanna Development Corp. Hanna", according to the records of the Palm Beach County Property Appraiser. ECF No. 36 at 4. The UST learned about the two additional parcels at the IDI on September 30, 2022, at which Hanna advised the UST that Debtor owned these properties through unrecorded deeds, but failed to provide the UST with copies of such unrecorded deeds. *Id*. at 3.

[4] Notwithstanding the indication in the SOFA that Debtor has not received any income this year or in the two prior years, Debtor's chapter 11 case management summary (ECF No. 8) listed the amount of approximately $36,000 for Debtor's fiscal or calendar year-to-date gross income and Debtor's gross income for the calendar or fiscal year prior to the filing of this Petition. It is unclear to the Court in which year the alleged $36,000 of income was received, or if this is the combined income for both 2021 and 2022. In

Debtor failed to assert *any* potential income or potential sale of assets with which to fund a reorganization, leaving the Court to conclude that there is an absence of a reasonable likelihood of rehabilitation. This failure constitutes "cause" under § 1112(b)(4)(A) and warrants dismissal or conversion of the Bankruptcy Case.

E. Equitable Considerations

The Court takes judicial notice of the multiple prior bankruptcy filings of entities controlled by Debtor's principal, Hanna Dev, or by Debtor's registered agent, Hanna. *See* Case Nos. 13-17854-PGH, 17-11976-EPK, and 18-13392-EPK (collectively, the "Prior Cases"). The debtors in the Prior Cases either defaulted under a confirmed chapter 11 plan or had their case dismissed by the bankruptcy court.

In Case No. 17-11976-EPK, the bankruptcy court granted a motion to dismiss the case and imposed a two-year injunction against the debtor, 68 Yacht Club Land Trust, filing a bankruptcy petition anywhere in the United States. The court also granted a mortgagee with *in rem* stay relief for a period of two years from the date of the order. *See* ECF No. 336 in Case No. 17-11976-EPK.

In Case No. 18-13392 filed by BNEVMA, LLC, an entity controlled by Hanna, two dismissal orders were entered. One dismissal order provided that the case was dismissed with a 180-day prejudice period against the automatic stay with respect to *in rem* actions against 14 parcels of real property owned by BNEVMA, LLC. *See* ECF

---

any event, this statement in the case management summary is contradicted by the statement in the SOFA.

No. 228 in Case No. 18-13392. A second dismissal order included a finding that the debtor's bankruptcy petition was part of a scheme to delay creditors involved in multiple bankruptcy filings affecting real property owned by the debtor in that case. *See* ECF No. 241 in Case No. 18-13392.

The Court is keenly aware of the impact that a bankruptcy filing has upon pending state court foreclosure proceedings for the various parcels of real property described in Debtor's Schedules and SOFA. (ECF No. 37). The commencement of this Bankruptcy Case grinds those enforcement actions to a screaming halt, as a result of the automatic stay under § 362. When a pattern of misconduct orchestrated by the principal of Debtor has been characterized by other courts as constituting bad faith and resulting in the dismissal of those cases, the Court must evaluate the totality of circumstances surrounding this Bankruptcy Case through the lens of that history. *Singer Furn. Acq. Corp. v. SSMC, Inc. N.V.,* 254 B.R. 46, 51-52 (M.D. Fla. 2000) ("The Eleventh Circuit has explained that in determining whether a bankruptcy case has been filed in bad faith, 'the courts may consider any factors which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions or, in particular, factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'") (citing *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988); *In re Albany Partners*, 749 F.2d 670, 674 (11th Cir. 1984)).

Moreover, this Court was not required to conduct an evidentiary hearing prior

14

to evaluating whether Debtor acted in bad faith, thereby justifying dismissal of this Bankruptcy Case. The Bankruptcy Code only requires bankruptcy courts to conduct such hearings as are appropriate in the given circumstances, and many courts have concluded that evidentiary hearings are not required before a bankruptcy court can determine that dismissal of a bankruptcy case is appropriate based upon a debtor's bad faith. 11 U.S.C. § 102(1)(A); *see also Singer Furn. Acq. Corp.*, 254 B.R. at 53.

Based upon the totality of the circumstances, including the full record of this Bankruptcy Case, the Court concludes that the filing of this Bankruptcy Case follows a pattern of evasive maneuvers undertaken by Hanna Dev or Nermine Hanna in the Prior Cases designed to thwart state court proceedings. The purpose of this Bankruptcy Case was no different, as its filing resulted in the cancellation of a foreclosure sale scheduled in Wycliffe's foreclosure judgment. *See* ECF No. 32-1. As a consequence, the Court finds that Debtor filed the Bankruptcy Case in bad faith, which warrants a 180-day ban on Debtor and any entity controlled by Hanna filing a bankruptcy case affecting property of this bankruptcy estate.

## CONCLUSION

Having considered the arguments of counsel and the full record of this Bankruptcy Case, the Court determines that dismissal provides the most equitable relief to all parties in interest. The record fails to demonstrate Debtor's eligibility for bankruptcy relief or intent to file bankruptcy. Because these essential requirements are absent, conversion is not warranted and dismissal is the appropriate course.

Moreover, in light of the Prior Cases filed or caused to be filed by Hanna for herself or entities she controlled, the Court will accede to the request of PNC to impose a 180-day bar against the filing of another bankruptcy case by Debtor or another entity controlled by Hanna which might impact PNC's collateral located at 4678 Hazleton Lane, Wellington, Florida.

Accordingly, it is **ORDERED** that:

1. This Bankruptcy Case is **DISMISSED** with a 180-day prejudice period (the "Prejudice Period") against refiling another bankruptcy case, as authorized by § 109(g)(1), based upon Debtor's bad faith in commencing this Bankruptcy Case. During the Prejudice Period, each of Debtor, Hanna, and any entity controlled by or related to Hanna is prohibited from filing any new bankruptcy petition in any United States bankruptcy court.

2. Based upon the Court's equitable powers under § 105, no bankruptcy petition filed within 180 days after entry of this order, by any person or entity, anywhere in the United States, shall give rise to a stay under 11 U.S.C. § 362(a) with regard to *in rem* actions against the following real property:

> Lot 61, Wycliffe Tract "H", according to the Plat thereof, recorded in Plat Book 74, at Pages 126 and 127 of the Public Records of Palm Beach County, Florida Parcel # 00-41-44-25-16-000-1610
>
> Street Address: 4678 Hazleton Lane, Wellington, Florida 33449

3. Within ten (10) days from the date of entry of this Order, Debtor shall file with the Court all monthly operating reports from the petition date

through the date of entry of this Order, indicating the cash disbursements for the relevant periods.

4. Within twenty (20) days from the date of entry of this Order, Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6).

5. Within ten (10) days from the date of entry of this Order, Debtor shall pay the Clerk of the Bankruptcy Court any outstanding fees, costs and charges in connection with this case.

6. The Court shall retain jurisdiction to enforce the provisions of this Order.

###

Copies Furnished To:

*All parties in interest by the Clerk*